J. S84033/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA     :     IN THE SUPERIOR COURT OF
                                 :            PENNSYLVANIA
              v.                  :
                                 :
KASHIF NOEL,                        :            No. 2422 EDA 2017
                                 :
           Appellant         :

Appeal from the Judgment of Sentence, July 31, 2017,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0007342-2016

BEFORE: BENDER, P.J.E., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 11, 2019**

Kashif Noel appeals from the July 31, 2017 judgment of sentence entered by the Court of Common Pleas of Philadelphia County following his conviction of possession with intent to deliver ("PWID"), persons not to possess firearms, firearm not to be carried without a license, and carrying a firearm in public in Philadelphia.[1] After careful review, we affirm.

The trial court set forth the following factual and procedural history:

> On June 30, 2016 at approximately 8:55 pm, [a]ppellant was driving a silver 2016 Chevy Malibu westbound on Moore Street at 24th Street when Officer Franc[i]s Rogalski[Footnote 2] observed [a]ppellant roll through a stop sign instead of coming to a complete stop. Rogalski and his partner (Officer James Tumolo) stopped the vehicle half a block up on 25th Street. The officers approached the

---

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. §§ 6105(a), 6106(a), and 6108, respectively.

vehicle with flashlights. [A]ppellant "was nervous, his hands were shaking, and he kept looking down at the shifter [in the center console area]."[Footnote 5] Rogalski immediately smelled the odor of marijuana emanating from the car. When he shined his flashlight into the car, Rogalski noticed an opened gold cylinder [identified as a "grinder"] located in the center console. He also noticed little particles inside the cylinder.[Footnote 7] Additionally, he noticed the plastic molding surrounding the gear shifter was misaligned at its seams and appeared to have been tampered with. Based on the aroma coming from the car, his observation of the particles in the cylinder, and his training, Rogalski believed the grinder contained marijuana. Subsequent lab analysis confirmed that the particles were, in fact, marijuana.[Footnote 8] The officers instructed [a]ppellant to exit the vehicle, and they conducted a pat-down search for their safety before placing him in the back of their patrol vehicle. However, the officers did not place [a]ppellant in handcuffs. The officers then notified [a]ppellant that they intended to search his vehicle based on probable cause that it contained illegal contraband.

[Footnote 2] Officer Rogalski had been a police officer for 2 years and eight months as of the date of the incident, June 30, 2016.

[Footnote 5] It was dusk and relatively dark outside at the time of the traffic stop. Officer Tumolo approached the driver's side of the vehicle, and Officer Rogalski approached the front passenger side. [A]ppellant was the only occupant in the vehicle.

[Footnote 7] [T]he gold cylinder was described as a "grinder," which is often used to break marijuana into pieces. [*S*]*ee* Exhibit C-1.

[Footnote 8] *See* Exhibit C-101: seizure analysis of the narcotics and grinder indicated the positive presence of cocaine in the Ziploc packets and marijuana in the grinder.

During his search, Rogalski lifted the plastic molding and saw a white bag filled with individually wrapped Ziploc bags containing a white substance. Overall, there were 29 red Ziploc bags and 2 blue Ziploc bags. Subsequent lab analysis confirmed that the white substance was crack cocaine.[Footnote 14] Rogalski then raised the plastic molding higher and found a loaded firearm beneath the bags of cocaine.[Footnote 15] When the police looked into the trunk, they also found a gun holster and car rental agreement in [a]ppellant's name.[Footnote 16] At this point, the officers placed [a]ppellant under arrest. When the officers searched [a]ppellant a second time, they recovered $662 from him.[Footnote 17]

[Footnote 14] *See* Exhibit C-10: forensic analysis indicating the presence of cocaine as well as the positive presence of marijuana in the grinder.

[Footnote 15] *See* Exhibit C-3: The firearm was a Glock .43 to .380 caliber loaded with four live rounds including one in the chamber. The gun's serial number was ABSF841.

[Footnote 16] *See* Exhibit C-S: property receipt 3257044 for the firearm holster; *see also* Exhibit C-6: the Hertz rental agreement for a silver 2016 Chevy Malibu rented in the name of the [sic] Kashif Noel.

[Footnote 17] [T]here was a large number of $1 bills, which was consistent with the type of cash buyers of crack cocaine typically transact with, according

> to an expert witness. *See* Exhibit C-9: notes of testimony from an expert witness testimony at a preliminary hearing regarding whether the Ziploc bags found in [a]ppellant's vehicle were consistent with PWID.

Trial court opinion, 6/4/18 at 2-4 (citations to record omitted; footnotes containing citations to record omitted; emphasis omitted).

> On June 30, 2016, [a]ppellant was arrested and charged with [PWID, persons not to possess firearms, firearm not to be carried without a license, and carrying a firearm in public in Philadelphia,] possessing a controlled substance, possessing drug paraphernalia, and possessing an instrument of crime.
>
> On November 11, 2016, [a]ppellant filed a motion to suppress physical evidence relating to his arrest. On April 18, 2017, the [trial] court held a Motion to Suppress hearing and denied [a]ppellant's request to suppress the physical evidence. On May 31, 2017, a waiver trial was conducted, and the court found [a]ppellant guilty of PWID, [persons not to possess firearms, firearm not to be carried without a license, and carrying a firearm in public in Philadelphia]. On July 31, 2017, [the trial court] sentenced [a]ppellant to 4-8 years['] incarceration for PWID followed by 6 months of probation for carrying a firearm without a license. No further penalties were assessed on the remaining charges.

*Id.* at 1-2.

Appellant did not file a post-sentence motion with the trial court. On August 2, 2017, he filed a notice of appeal to this court. The trial court, on August 11, 2017, ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Prior to the entry of

the trial court's Rule 1925(b) order, appellant's trial counsel, after perfecting appellant's direct appeal rights, filed a motion to withdraw. On September 6, 2017, we granted appellant's trial counsel's motion to withdraw and remanded for the trial court to appoint appellate counsel to represent appellant. The trial court did so and ultimately issued a new Rule 1925(b) order on January 11, 2018. Appellant complied on February 19, 2018. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on June 4, 2018.

Appellant raises the following issues for our review:

> A. The trial court committed error when it denied the defense motion to suppress evidence as the police officers lacked reasonable suspicion or probable cause to stop [] appellant's vehicle and/or search the interior of the vehicle.
>
> B. There was insufficient evidence to find [] appellant guilty by way of constructive possession of PWID, VUFA-6105 and VUFA-6106.
>
> C. The [trial] court abused its discretion when it sentenced [appellant] to a period of incarceration of 4-8 years based on the convictions.

Appellant's brief at 5 (full capitalization omitted).

In his first issue on appeal, appellant argues that the trial court erred when it denied his motion to suppress evidence. When reviewing a denial of a motion to suppress evidence, we are governed by the following standard:

> [An appellate court's] standard of review
> in addressing a challenge to the denial of

a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa.Super. 2015) (citation omitted).

Additionally, the Pennsylvania Supreme Court has ruled that when reviewing a motion to suppress evidence, we may not look beyond the suppression record. *See In re L.J.*, [] 79 A.3d 1073 ([Pa.] 2013).

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. 2017).

Here, appellant contends that the traffic stop was pretextual and that the police used a "*de minimus* traffic stop as an unjustified basis for stopping appellant [] for the purpose of furthering an investigation into a

more serious crime for which they [did] not have probable cause."

(Appellant's brief at 12 (brackets in original).)

> "Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b)[2] must serve a stated investigatory purpose." ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa.Super. 2010) (***en banc***) (citation omitted). For a stop based on the observed violation of the Vehicle Code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop. ***Feczko***, 10 A.3d at 1291 ("Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation."). Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense. ***Commonwealth v. Chase***, [] 960 A.2d 108 ([Pa.] 2008).

***Commonwealth v. Harris***, 176 A.3d 1009, 1020 (Pa.Super. 2017).

In order to conduct a warrantless search of a motor vehicle, the police need only establish probable cause and need not establish any exigent circumstances beyond the inherent mobility of the vehicle. ***Commonwealth v. Gary***, 91 A.3d 102, 138 (Pa. 2014) (plurality). Probable cause is established when,

> the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. The evidence required to establish probable cause must be more than a

---

2 Section 6308(b) of the Motor Vehicle Code relates to a police officer's authority to stop a vehicle. ***See*** 75 Pa.C.S.A. § 6308(b).

> mere suspicion or a good faith belief on the part of the police officer.

*Commonwealth v. Davis*, 188 A.3d 454, 459 (Pa.Super. 2018), quoting *Commonwealth v. Runyan*, 160 A.3d 831, 837 (Pa.Super. 2017) (citation omitted).

Turning first to the issue of whether the police had probable cause to conduct a stop of appellant's vehicle, the record reflects that the police observed appellant fail to come to a complete stop at a stop sign, in violation of Section 3323 the Motor Vehicle Code. (Notes of testimony, 4/18/17 at 7-8; *see* 75 Pa.C.S.A. § 3323(b).) Accordingly, the police had probable cause to stop appellant's vehicle.

We shall now address whether the police established the requisite probable cause to conduct a search of appellant's vehicle. As noted by the trial court,

> The facts in our case are analogous to *Gary* in that Rogalski detected the odor of marijuana at the onset of the investigatory stop. Rogalski also noticed the opened cylinder with apparent marijuana particles in plain view. . . . [T]here was probable cause to search [a]ppellant's vehicle based on the "plain smell" of marijuana (coupled with other evidence that [a]ppellant in fact possessed marijuana).[3] Support for probable cause may also be inferred from the officer's view of the misaligned molding surrounding the gear shifter.

---

[3] *See Commonwealth v. Stoner*, 710 A.2d 55, 59 (Pa.Super. 1998), citing *Commonwealth v. Stoner*, 344 A.2d 633 (Pa.Super. 1975) (recognizing odor may be sufficient to establish probable cause to search a vehicle).

Trial court opinion, 6/4/18 at 7.

The record provides a basis of support for the trial court's conclusions regarding probable cause. (**See** notes of testimony 4/18/17 at 8, 10.) Therefore, we find that the record supports the trial court's factual findings, and its legal conclusions were without error. Accordingly, appellant's first issue is without merit.

Appellant next avers that the Commonwealth failed to present sufficient evidence to justify appellant's convictions of PWID, persons not to possess firearms, and firearm not to be carried without a license. (Appellant's brief at 16.)

> In reviewing the sufficiency of the evidence, we view all evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the fact finder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."
>
> Moreover, when reviewing the sufficiency of the evidence, the Court may not substitute its judgment for that of the fact finder; if the record contains support for the convictions, they may not be disturbed.

**Commonwealth v. Stokes**, 78 A.3d 644, 649 (Pa.Super. 2013) (citations omitted), **appeal denied**, 89 A.3d 661 (Pa. 2014).

For all three offenses, appellant contends that the Commonwealth failed to prove beyond a reasonable doubt that appellant was in constructive possession of the narcotics or the firearm in this case. (Appellant's brief at 14.)

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa.Super. 2013), *appeal denied*, 78 A.3d 1090 (Pa. 2013), quoting *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa.Super. 2012), *appeal denied*, 63 A.3d 1243 (Pa. 2013).

Employing a totality of the circumstances analysis, we find that the Commonwealth presented sufficient evidence to enable the fact-finder to conclude that appellant exercised conscious dominion and control over the contraband at issue in this case beyond a reasonable doubt. As noted by the trial court,

> First, the police found crack cocaine, weighing approximately 6.5 grams, in individually wrapped Ziploc bags behind the gear shifter molding in [a]ppellant's car. Second, [a]ppellant was the driver and the only person in the car at the time of the traffic stop. The car rental agreement was also in his name. Third, [a]ppellant possessed $662 when the

> officers searched him incident to arrest. Fourth, the Commonwealth's narcotics expert testified that the individually wrapped packets and the large number of $1 bills [a]ppellant had were consistent with narcotics distribution. Officer Rogalski also testified that [a]ppellant appeared nervous and his hand[s] were shaking.

Trial court opinion, 6/4/18 at 10-11 (emphasis omitted; footnotes omitted). Using the same analysis, we find that the Commonwealth presented sufficient evidence to enable the fact-finder to conclude that appellant constructively possessed the firearm at issue in this case beyond a reasonable doubt. Accordingly, appellant's second issue is without merit.

In his third and final issue on appeal, appellant argues that his aggregate sentence of 8 to 16 years' imprisonment was excessive. Specifically, appellant's challenge to the discretionary aspects of sentence is on the grounds that the trial court failed to consider mitigating circumstances, including strong family support and the "minor role that the appellant played in his past convictions." (Appellant's brief at 19-20.)

Here, we begin our analysis by determining whether appellant has complied with the procedural requirements of challenging his sentence. First, appellant timely filed his notice of appeal pursuant to Pa.R.A.P. 902 and 903. Appellant, however, failed to file a post-sentence motion with the trial court, and he failed to raise any objections to his sentence at the sentencing hearing. Accordingly, appellant has waived this issue on appeal. **See Commonwealth v. Griffin**, 65 A.3d 932, 936 (Pa.Super. 2013),

*appeal denied*, 76 A.3d 538 (Pa. 2013), quoting *Commonwealth v. Lamonda*, 52 A.3d 365, 371 (Pa.Super. 2012), *appeal denied*, 75 A.3d 1281 (Pa. 2013) (citation omitted).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/19